The first case today is in the interest of S.A. and D.A., for the appellant, Ms. Hall, and for the appellee, Ms. Moore. Take a seat. May I please report? My name is Latasha Hall, and I'm representing Tanya Alexander, the respondent. This appeal arises from the trial court's finding that Tanya was unfit. The issue in this appeal is whether that finding was against the manifest weight of the evidence. The trial court found Tanya unfit on three grounds. One, that she failed to maintain a reasonable degree of responsibility as to her children's welfare. The second being that she failed to make reasonable efforts to correct the conditions that were the basis for the removal of her children. And three, that she failed to make reasonable progress toward the return of her children within nine months following their adjudication of neglect. I believe the trial court's ruling was against the manifest weight of the evidence. With regard to the first grounds, that she failed to maintain a reasonable degree of responsibility as to her children, the trial court reasoned that Tanya failed to engage in complete services. On August 8, 2012, the Department of Children and Family Services, or DCFS, initiated a family service plan that identified four objectives for Tanya. The first being that Tanya needed to maintain stable mental and emotional health. The second being that she needed to maintain a drug and alcohol-free lifestyle. The third objective was that Tanya needed to obtain and maintain a safe and appropriate residence to provide her children with a proper shelter. And the fourth objective was that Tanya needed to obtain and maintain employment. With regard to the first objective of maintaining mental and emotional health, Tanya was not on medication at the beginning of the case, but she had a history of depression. Right from the beginning of the case, she got assessed at Chestnut Health System, and she obtained a prescription for medication for Zoloft in November of 2012. She consistently took that medication throughout the duration of the case. In about November of 2012, she relocated to Rockford, and she told the therapist at Chestnut that she was relocating, and they suggested that she obtain counseling services at Rosecrantz in Rockford. Once she went to Rosecrantz, then she was open and honest with the therapist, and she told the therapist her situation about trying to find employment and the like, and services were no longer needed. With regard to her obtaining employment, she searched for employment diligently throughout the case. She filled out applications. She worked with a caseworker. She completed courses offered by Promise Land Employment Services, which provides the attendance, the capability to search for jobs and be successful in those jobs. Did she have employment in Bloomington before she went to Rockford? She did not. She was employed at the beginning of the case, but lost her employment shortly after the children were taken. After searching for jobs diligently, finally in June of 2013, she obtained a job at a call center. This job required her to meet a quota, sales quota. So every morning she would get up at about 5 o'clock, 5.15. She would catch the bus at 6, road two hours on the bus in order to be at work by 9 o'clock. She worked diligently while she was at work and called, made calls, and tried to meet the sales quota. For two weeks in a row she did not meet the sales quota and unfortunately lost that job. Her second objective was to secure housing. In November 2012, as I mentioned earlier, she moved to Rockford. At the beginning of this case, mother lived in a mobile home with her brother. She and her brother were not close. They had kind of a strained relationship and she needed to move. And she was presented with this opportunity in November of 2012 to move in with a lifelong friend, someone who she had known for over 17 years. She took advantage of this opportunity and moved there. And after moving there and it not working out as she had planned, mother took extreme measures and discussed with the father of the children what they could do in order to pull together their financial resources. Mother, father of the children, and his girlfriend decided to move in together in a motel for a short duration. After a couple months in the motel, the motel ended up raising rent. And mother and father and girlfriend continued to work together. And once the father and the girlfriend moved to a home, mother moved in with them and stayed in the basement. The mother and father were not together during this time, but they still wanted to work together for financial reasons. The third objective that mother had was that she needed to abstain from substance abuse. Mother completed her assessment in Bloomington. She completed treatment. She submitted to all drug tests and tested negative every single time. Not once did she test positive. There was no evidence that she abused substances throughout the duration of the case. And once she was discharged from Chestnut, they mentioned that she could use Alcoholics Anonymous Services if she felt the need. Mother never felt the need and she never dropped dirty, as they call it. The second objective was that mother needed to make reasonable efforts to correct the conditions that were the basis of the removal of the children from her care. Now, the children were removed from an unsanitary home, but the trial court reasoned that it was really mother's underlying mental health issues that caused their removal. With regard to mother's mental health issues, again, right from the beginning, she went to Chestnut. She had a mental health assessment and she attended counseling sessions. If she missed one, she made it up. She enjoyed meeting with the therapist. She felt that it was helpful. And before she moved to Rockford, she asked DCFS if she would be able to continue services once there. DCFS told her that they would provide her a bus pass. She would have transportation to continue those services. She eagerly informed her therapist of this fact, told her that she was moving, and DCFS had told her she could continue the services and they would help her provide a bus pass. Once she moved to Rockford, DCFS failed to provide that bus pass. Mother worked as much as she could trying to get rides from people that she knew. When she obtained those rides, she worked towards completing services, whatever services she could, and employment was one that she worked towards. Once DCFS finally did provide a bus pass, mother went to Rockford and got assessed. Rosecrans, excuse me. Mother had previously been to Rosecrans, explained that to the therapist, told the therapist, I've been here before, I have a history of mental health issues, a history of depression, currently taking Zoloft, feeling better. Tanya had previously taken Zoloft for her depression and it worked well for her and she continued to do so throughout the case. When she went to see the therapist, told her, I feel better, it's working for me. She expressed to the therapist her struggles in finding employment. She expressed that she was just very open and honest with the therapist and the therapist decided that she no longer needed treatment. She was taking her medication consistently and doing what she needed to do for her mental health. The third grounds that the trial court found mother unfit on was that she failed to make reasonable progress toward the return of the minor children within nine months after they were adjudicated and neglected. The trial court said that while mother moved to Rockford and when things didn't pan out, trial court didn't quite understand why mother stayed there. Mother did not have help in Bloomington, in the Bloomington area, and although she lived with her brother, it wasn't the best relationship and mother needed to move and take advantage of an opportunity presented to her in Rockford. When that opportunity did not pan out as expected, mother didn't quit. Mother didn't move back to Bloomington for no reason at all. Instead, she stayed in Rockford and she discussed with the father of her children what they could do to get it together financially. By the end of the nine month period, the trial court said that mother was only satisfactory on the objective of maintaining a drug and alcohol free lifestyle. Throughout the duration, mother had these four objectives, but the DCFS provided things that she needed to do to obtain those objectives and they gave her probably about 13 items that she needed to complete. Mother was found to be satisfactory on 12 of those items. Although she had not completed the services, she was moving towards completion. The trial court also found that mother did not fully report her history to the counselor at Rosecrans. Mother maintained that she was very open and honest with the counselor. She had been there before. They had her history of mental health issues. She told the therapist that she was on medication, that she was taking Zoloft. She was honest with the therapist and maintained that if she went back, she would say the same thing. She felt better at that time because the medication was working. The trial court said that the bigger problem was the fact that because mother had been to Rosecrans previously, she knew where it was located and did not go there until the end of March, which was about four months after she moved. Before mother moved, she spoke with DCFS. DCFS assured her they would provide her a bus pass in order for her to obtain these services. Mother did not have the bus pass. Once she got there, DCFS told her they would not provide that at that time. Mother did the best she could. When they finally did provide her the bus pass, mother immediately went to Rosecrans and got assessed. Once there, she told the therapist exactly how she felt, took the necessary paperwork, integrated assessment that she was told to take, and did what was asked of her. After meeting with the therapist and the therapist finding that no further services were needed, DCFS still was not happy and told mother that's the incorrect assessment. So DCFS sent her to the therapist. The therapist makes the therapist's assessment, and DCFS does not agree. At no time was it ordered for mother to go to therapy again. It was suggested to her that she go back and do another assessment, but mother had already done exactly what was asked of her. I believe the evidence shows that mother maintained a reasonable degree of responsibility as to her children. She worked hard towards obtaining employment, even getting to the point where she did obtain employment at a call center. Not an ideal job, if we think about it. You are at the call center. You're working hard, picking up the phone, making cold calls, trying to meet a sales quota every day. She's getting up at 5 o'clock in the morning. She's catching the bus at 6 o'clock. She's getting up four hours before she's set to start work. By the time she gets to work, she jumps on the phone and tries to meet her sales quota. Only missed her sales quota for two weeks in a row until she was terminated. She worked hard towards securing housing, even doing something that may be unconventional. Maybe something I wouldn't do, maybe something you wouldn't do, but something that needed to be done to get her kids back and to obtain housing. She worked with the father of her children, who she was no longer with. She worked with him and his girlfriend. His rights been terminated, I just can't recall. Yes. Did he surrender, or did he go to hearing? I believe he went to hearing. Pardon me? I believe he went to hearing, but I'm not completely sure about that. She worked to, um, I'm sorry. She took unconventional measures. She worked with the father and his girlfriend. They moved into a motel together, living in a... Would you view that as progress? I would review that. Or would you review that, maybe that's effort? What progress was made toward it being realistic, that the children could be returned to her if she's living in the basement of a house with her former paramour, who may not be an ideal parent, and his girlfriend, and she doesn't have an appointment. I believe that it could be looked at as progress, and the reason why is because I believe when they're pulling together their financial resources and she's looking to obtain employment, she's coming out of less money each month, and she's able to put together, put to the side a little bit of money while she's looking for employment, so she's not... How do you put aside money if you don't have employment? I believe she was getting unemployment. For what? Compensation, yes. Okay. With regard to abstaining from substance abuse, mother never once abused substances. Right from the beginning of the case, she submitted to drug tests. She never dropped dirty, as they call it. She did not abuse substances throughout the entirety of the case. With regard to her mental health, right from the beginning, she went to the assessment at Chestnut Health Systems. She went to counseling sessions with Ms. Richelewski. She took medication as soon as she was able to get it in November of 2012, and she took it throughout the duration of the case. She took her discharge paperwork from Chestnut to Rosecrans as soon as she was able to go and see a therapist there, as soon as DCFS provided the bus pass for her. She told the evaluator how she felt, that she had more energy, that she felt more positive about herself, that the Zoloft was working. She expressed to the evaluator her struggles in finding employment. She expressed to the evaluator that she had been there before, a few years prior. She was open with the evaluator, and it was determined that she no longer needed services. With regard to her, okay, so those were the three problems that the trial court found her unfit on, and I believe that the evidence shows that she was fit, and I ask that the trial court's ruling be reversed. Thank you. We'll have additional time on rebuttal. May I please look over? My name is Perry Miller. I'm here on behalf of the State of Illinois. As to the first ground, that Respondent Mother failed to maintain a reasonable degree of responsibility as to the minor's welfare, this finding was not against the manifest weight of the evidence. Ms. Hall was correct. The court implemented, there were four different grounds upon which Respondent Mother's client service plan was inactive, and that was on August 8, 2012. In its background, previously, Respondent Mother had two prior cases where she was found to be neglectful and had addressed the same issue. At the time these children were taken into care, the home was dirty and in a disarray. It was determined that she needed counseling. She had a history of depression, and what was the root cause of her being able to provide inadequate care and not maintaining a home was because of her depression. So one of the goals that DCFS had in the client service plan and also the trial court approved was that for Respondent Mother to obtain mental health counseling. In September 2012, she met with the counselor. She was doing well, making progress. At that time, the counselor discussed her depression, her anxiety, marital concerns, and grief. This was important because without the counseling, Respondent Mother was not able to properly parent and provide a safe environment. Her counselor was very concerned when Respondent Mother stated that she would be moving to Rockland. That was because the counselor knew that Respondent Mother still needed to have counseling. And she also discussed with Respondent Mother about her continuing her counseling. Respondent Mother had met with her counselor there for a total of six sessions. Five of those six sessions, Respondent Mother was lonely, isolated, and feeling depressed. This is what she stated to the counselor. So that's why the counselor was very, very concerned about her continuing her counseling. Her counselor assisted her in contacting her caseworker to make provision for her to continue her counseling. Respondent Mother acknowledged that she knew that she was to engage in services immediately when she relocated to Rockland. When she did relocate to Rockland, she took four months before engaging in any services at all. What about the argument that counsel made concerning the bus pass not being provided to her? That is correct. The bus pass was not provided to her immediately, but I would point the court to this. Number one, Respondent Mother, when she moved to Rockland, she had money where she went from hotel to hotel. That money could have been used to get one ride up to Rosecrantz, the institute that she needed to go to for her assessment. Also, Respondent Mother had money, but she acknowledged that she caught rides to different places. She could have easily gotten a ride up to Rosecrantz Institute to obtain the assessment. I wonder how easily she could have. Was she promised the bus pass by DCFS? Did they agree to provide her transportation? Yes. That they didn't do that? DCFS, they ended up, they didn't get the bus pass for Respondent Mother immediately. But at the same time, Respondent Mother was told to go to the advocacy center and that she would be assisted there. And Respondent Mother also had money to be able to go to the different hotels. And when she stayed in these hotels with Respondent Father and his girlfriend, she stated that she was saving money. So this money was something as important as the counseling and knowing that she needed the counseling, and that was a major goal, and being able to be responsible for her children and able to be able to appropriately parent them. It was not unreasonable that she could not have ended up getting, using that money to go to Rosecrantz Institute to get the assessment. And also at the Institute, it would help her address other issues too. It was a community-based institution that helped address various issues. So while DCFS did not immediately give Respondent Mother a pass, Respondent Mother did make the choice and was able to get other places. And with this being so important, I see no reason why Respondent Mother could not have ended up taking one. How far is Rosecrantz from where she was living? It was one to one and a half miles. And it's true the trial court stated that Respondent Mother could have walked up there, and that's a determination. That was a statement that the trial court had made. It was only a mile and a half from where she was living? One and a half to two miles. That was the testimony from where she was staying in the hotel. And for four months, Respondent Mother didn't engage in any services at all. Then she goes, and she's told after her assessment that she doesn't need any more treatment. As to that, that was based upon, and that's one of the items that the trial court focused on. And the trial court found that the Respondent Mother had not been honest and credible with the evaluator at Rosecrantz. And I point out that when she went to Rosecrantz to get the mental health evaluation, when her counselor in Bloomington received the evaluation form, the counselor testified that there was information that was missing on the evaluation form by the assessor. Well, did DCFS send the integrated assessment to Rosecrantz? What reports did DCFS provide, or her counselor in Bloomington? DCFS did not provide reports up to Rosecrantz. And the reason why is because the system that Rosecrantz had was a self-reporting system. The person goes in there and they report to the evaluator the relevant information and that's what one of the counselors testified to, that they did not send packets up there. It was a self-reporting system. But Rosecrantz was the system picked by DCFS for her to go to. That is correct. And they had a contract with them. They have a contract with an agency that won't accept their reports or information about the people that they are sending there for counseling. Assessments. Does that make sense? Well, Your Honor, the way that their contract works with them, that the person that's going in for the evaluation needs to self-report. And the information that Respondent Mother gave, she wasn't open and honest because when you look at the categories such as the medication file, her physical health history, her personal history, all of that was answered. And Respondent Mother would know herself that she had recently had counseling which was not disclosed to Rosecrantz. She had been at Rosecrantz before. She had provided that information to Rosecrantz before. Is it possible she assumed they had that information already? This would have been in an earlier case. What was noted was that Respondent Mother had recently had mental health counseling and had addressed depression, which was very important for her to get counseling so that she would be able to handle the life stressors and other factors that she was encountering. Okay. You're dealing with a person facing a lot of life stressors. Her children have been taken from her. She has no employment. She has no housing. And DCFS is complaining because she didn't provide enough background information to Rosecrantz. It's not that DCFS was just complaining about her not providing enough information. It was that in order for her to be able to get an evaluation and receive the necessary counseling, she needed to report those facts. And she knew the fact that, number one, that she had recently moved from Bloomington. She knew her living arrangement. She also knew that she was feeling anxiety and stress. That her living arrangement, such as living with Respondent Father who had a girlfriend, which Respondent Mother stated, that this caused her to be depressed and created anxiety. And against her counselor's advice, the counselor stated that Respondent Mother did not need to be in that type of situation. And Respondent Mother further stated that she did not want Respondent Father's girlfriend to be participating in the visitation with her children. So there were a lot of critical issues that was going on that Respondent Mother did need to have the appropriate counsel. So Respondent Mother also was making the choices that she would continue to live in a situation where Respondent Father and his girlfriend and Respondent Mother had money that she was contributing to the rent and to the cost of hotel room. So this money could have been used to go up to Rosecrans to get the evaluation. That is true, Your Honor. And there was an advocate that was appointed to Respondent Mother. Respondent Mother, she moved to Rockwood. When she moved to Rockwood, she moved there and told her counselor that she had housing. Her housing was with a friend and a roommate. Within a month, the friend and roommate moved out. Based on Respondent Mother's own testimony, she stated that she then moved to a hotel and then Respondent Father's girlfriend found a hotel room for her to move into, which she moved into with Respondent Father and his girlfriend, which was against the advice of her counselor. Also I should point out is that with the housing advocate, the court found that in the permanency order that Respondent Mother had not followed through with the housing advocate. That is what the permanency order entered by the trial court in February 2014 stated. Further, the permanency report stated that as early as January, the advocate center had contacted Respondent Mother and they could not get in contact with her. So DCFS and the agencies were trying to provide help to Respondent Mother. And they were not making it difficult for Respondent Mother to be able to get services. But Respondent Mother was not carrying through herself. And in light of that, it was only so much that DCFS and other agencies can do. There are many different clients that they handle and the state doesn't propose that the transition there was the easiest. But at the same time, when Respondent Mother told DCFS that she was going to be moving up to Rockford, one of the counselors warned some of the difficulties that she might incur. And also when she was in Bloomington, I will point out that she had a support system while she was in Bloomington along with her children. That is correct. And she was also on a waiting list in Bloomington. And she was working with a worker to help her get housing. So there were services being provided. There were things. She had transportation to her services. And Respondent Mother also did at one point have employment in Bloomington. She lost that employment because she became involved in an altercation at the gas station, which involved Respondent Father. And she lost that employment. And then later in July 2013, she did obtain employment at Cervicom Center and worked there for a couple of months. It's the state's position that Respondent Mother did not establish reasonable responsibility as to the children. And also she did not make reasonable progress, reasonable effort toward the return of the children. Respondent Mother did not make reasonable efforts to correct the conditions that were the basis for the removal of the children. The children were removed because of crime and neglect. She needed to address her mental health issues. She did not go to, when she did go to Rosecrans four months later, as earlier stated, she did not accurately report what was her medical condition. As to reasonable progress towards the return of the children within nine months of adjudication of the neglect, Respondent Mother did not make reasonable progress. Again, she had not completed all four goals, only one, which was the substance abuse. She had not appropriately addressed her mental health, her housing, or her employment. Respondent Mother was provided a housing advocate, as earlier stated, to maintain housing, independent housing, because at that time she was living in the home situation with Respondent Father and his girlfriend, and she was not in a situation that was in her best interest and for her mental health. As of May 2013, the caseworker testified that she would in no time have recommended that the children be returned to Respondent Mother, that she was no closer to having the children return home than when she was originally assigned the case. So there was no evidence for the court to conclude that Respondent Mother's progress was of such a quality that the minors could be returned to her in the near future. Respondent Mother failed to make reasonable progress from August 8, 2012 to May 8, 2013, and was unfit on this ground. The State believes that the trial court properly found Respondent Mother unfit on three grounds. The trial court's finding is only against the manifest weight of the evidence, where the opposite conclusion is clearly evident. It cannot be said that the opposite conclusion was clearly evident from a review of the total facts in this case. The State would respectfully request that this court affirm the trial court's decision. Thank you. Thank you. Rebuttal. Thank you, Your Honors. I just want to briefly touch on a few points the State made. At the beginning of this case, Tanya lived with her brother, as Your Honor said, 11 people in a two-bedroom home, trailer home. She and her brother did not have the best relationship. Her brother and her sister-in-law told her she needed to move out. She had to move to Rockford. Before she moved to Rockford, though, she spoke with DCFS. She made sure that her services would be continued in Rockford. DCFS assured her they would be. She moved to Rockford. Before she moved to Rockford, she told the therapist at Chesna in the Bloomington area that she  had already spoke with DCFS. Everything would be continued. The counselor told her, okay, continue those sessions when you get to Rockford. No problem, Tanya's thinking. DCFS is going to provide me a bus pass. They're going to help me complete these services when I get there. I'll continue to do so. She gets to Rockford, only to find out that DCFS has said, no, we're not going to give you a bus pass now. It's too expensive. What about the fact that Rosecrans is only a mile or a mile and a half away from where she's living? Rosecrans is a mile and a half to two miles away from where she was living. We're talking November 2012 to April 2013. So we're talking winter months in Illinois. So are we saying that she should walk in the winter months in Illinois to get to Rosecrans? We're not asking her to walk ten miles. We're asking maybe a mile and a half. And if you want to get your children back, it seems to me, if they're not getting your bus pass, and you can't afford to buy a bus pass, you can walk it. I understand. When she would get rides from people that she could get rides from, or when she did obtain transportation, she worked towards completing objectives. She had four objectives to complete. She's working hard towards them. She's trying to find employment. She's trying to better her financial situation so that she can obtain suitable housing and get transportation that she needs to go to mental health services. She did the best she could with the resources she had, I believe. When the bus pass was given to her, she immediately went to Rosecrans. That was in April. Did anybody from Rosecrans testify? No. Nobody from Rosecrans testified. Which was my third point. If the state wanted to prove that she was not honest with Rosecrans, why didn't they just subpoena the therapist from Rosecrans? Instead they bring in her former therapist in Bloomington who says, well, I see what she provided to them. I wouldn't have made that assessment. Okay. And the state brought in someone from DCFS who says, yes, we sent her there, but we don't agree with that assessment. Again, they're telling Tanya where to go. Tanya goes, does exactly what they asked, and then they're still not happy. It's a dire situation and it continues to look more bleak to her. With regard to her going to Rosecrans in April, that was as soon as she got the bus pass. That proves that DCFS not providing that bus pass is the reason she did not obtain these services. Again, when she could catch rides and could go to places, she worked on what she could. She tried to obtain employment. Again, the situation is so bleak, there's things that she has to do to get her children back. And what order do you do them in? Employment, housing, and mental health services. How am I going to go to mental health services if I don't have transportation? How am I going to get transportation if I don't have a job? How am I going to get a job if I don't have a bus pass? The list goes on and on, and Mother continued to move forward right to the end of the case. With that, I believe the trial court's findings should be reversed. Thank you. We take this matter under advisement and stand in recess until the readiness of the next case.